## Tyrone Gas and Water Company v. Tyrone Borough.

*O. H. Hewit,* for plaintiff; *R. H. Gilbert* and *C. K. Robinson,* for defendant.

PATTERSON, P. J., Jan. 7, 1929.—

1. The Tyrone Gas and Water Company is a corporation existing under a Special Act of Assembly of March 10, 1865, P. L. (Appendix, 1866) 1147. By the provisions of said act, said company became vested with "the exclusive right to provide, erect and maintain all works and machinery necessary or proper for making and introducing into the Borough of Tyrone a sufficient supply of gas, and raising and introducing a sufficient supply of good and wholesome water from the Sinking Run or some other convenient source."

2. On Sept. 1, 1893, the said Tyrone Gas and Water Company, by proper resolution duly adopted, formally accepted the provisions of the Constitution of the State of Pennsylvania of 1874 and of the General Incorporation Act of

April 29, 1874, P. L. 73, applicable thereto. A true and correct copy of said acceptance, together with letters-patent issued by the Governor of Pennsylvania and the record pertaining thereto in the office of the Secretary of the Commonwealth, was put in evidence and is marked Exhibit —.

3. The defendant borough was incorporated July 27, 1857, under General Borough Act of April 3, 1851, P. L. 320. About Jan. 1, 1870, the plaintiff water company commenced the supply of water to the inhabitants of the Borough of Tyrone. And on or about October, 1874, commenced the supply of manufactured gas in said borough, and has continued to furnish both water and gas to the inhabitants of Tyrone Borough to the present time.

4. The plant and physical properties of the said plaintiff company are entirely separate and distinct, so far as the water-works is concerned and so far as the gas-works is concerned. The two plants are not in any way physically identified with each other, and there would be no physical dismemberment growing out of the separation of the gas and water-works. Some of the water-lines and gas-lines are laid in the same trench and a common storage facility for supplies has been provided for both gas and water supplies, and both the gas and water companies have been engaged and operated by the same organization and the same individuals. In all other respects, the properties of the two companies are separate and distinct.

5. The Council of the Borough of Tyrone, on June 7, 1926, enacted an ordinance, numbered 346, approved by the Burgess of Tyrone June 9, 1926, entitled "Ordinance No. 346, signifying and expressing the purpose and desire of the council of the Borough of Tyrone, Penna., to acquire all of the properties of the Tyrone Gas and Water Works Company owned and used by the said company for water-works purposes, and authorizing the Water Committee of the Borough of Tyrone to do everything necessary and needful to accomplish the said purposes."

6. On July 12, 1926, the defendant Borough of Tyrone filed a petition with the Public Service Commission of the Commonwealth of Pennsylvania to No. 5326, 1926, application docket, praying for a certificate under article III, section 3 d, and article V, sections 18 and 19, of the Public Service Company Law, evidencing its approval of the acquisition and its right to operate the water-plant of plaintiff company.

7. On Sept. 8, 1926, the Tyrone Gas and Water Company, plaintiff, filed this bill in equity for an injunction restraining the said Borough of Tyrone, defendant, "from taking or maintaining any further action or proceedings to take over, condemn and appropriate the water-works and property of the plaintiff Tyrone Gas and Water Company; and particularly from taking any further action or proceedings before the Public Service Commission of the Commonwealth of Pennsylvania respecting the same," and for further relief.

*Discussion.*

The prayer of the injunction is based primarily on the averment contained in said bill to the effect that the gas-works and the water-works are indivisible and not severable and that the defendant borough has not, under the law, the right to dispossess or divest plaintiff's ownership of said water-works without including in the divestiture the gas-works. And the taking of the water-works, under and by virtue of the Act of Assembly of April 29, 1874, P. L. 73, will leave the plaintiff the ownership of the gas-works and property which cannot be operated at a profit, and that such taking would be an act *ultra vires* on the part of the defendant borough. With this conclusion we cannot agree. True it is that at the time of the enactment of the special act of

assembly incorporating the said Tyrone Gas and Water Company it was permissible, under the Constitution of Pennsylvania, for such corporation to be incorporated for more than one purpose, but after the adoption of the Constitution of 1874 and the Act to Provide for the Incorporation and Regulation of Certain Corporations, approved April 29, 1874, P. L. 73, such corporation existing for two or more purposes could not be created. However, whether such a corporation as the Tyrone Gas and Water Company would be chartered under the present law need not concern us at this time. And the effect of the enactment of the subsequent law, relating to corporations under previous enactment, such as the special act creating the plaintiff company, can have no bearing on the question involved here, for the reason that the plaintiff corporation, by its voluntary act on Sept. 1, 1893, formally accepted the Constitution and the Incorporation Act of 1874. This acceptance was the voluntary action of the stockholders of said company, and the Governor thereafter issued a new charter for said corporation under the Constitution and the Act of 1874, thereby making it, by its own act and the subsequent action of the Governor, subject to all of the provisions of the Act of 1874, the same as if it had been incorporated after the passage of the same. Pamphlet Laws, 1874, § 40, page 103, provides, in part, as follows: "The certificate for a recharter shall state the fact that it is a renewal of the former charter, naming the corporation and the date of its first charter. . . . It shall expressly accept the provisions of the Constitution of this State and of this act and expressly surrender all privileges conferred upon such corporation by its original charter that are not enjoyed by corporations of its class under this act or general laws of this Commonwealth. . . . The said rechartered corporation shall be and exist as a new corporation under the provisions of this act and of its said renewed charter." Clause 7, section 34, of said Act of April 29, 1874, P. L. 73, reads as follows: "It shall be lawful at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city or district into which the said company shall be located to become the owners of said works and the property of said company by paying therefor the net cost of erecting and maintaining the same, with interest thereon at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared." Under the language of the foregoing clause, a municipality is given the right to acquire either the gasworks or the water-works or both. And it is not necessary, in taking one property, to include the other.

It was incumbent upon the plaintiff company, immediately after its acceptance of the Incorporation Act of 1874, to keep its accounts, both as to property, income, dividends and other matters, so that the provisions of clause 7 could be easily and quickly applied, both for the water-works properties and for the gas properties. And the failure of said corporation to perform all things necessary on its part to be done in connection with its renewed existence under the Incorporation Act of 1874 cannot now be used to defeat the rights of the municipality under said act as contained in clause 7.

All of these matters have been considered in an opinion of this court by the late Judge Bell in the case of the Tyrone Gas and Water Company, as reported in 195 Pa. 566, which opinion was adopted as the opinion of the Supreme Court, and it is so applicable to the question under consideration that we quote it at length:

"The argument of counsel for plaintiffs that said act, just recited, required no surrender of privileges, therefore no privileges were lost, does not strike me as being of sufficient force to sustain their contention. Inferentially, at

least, there was to be a surrender of old privileges as a consideration for the obtaining of the new. The reasoning of Judge Reeder in Wallace v. Lehigh Water Co., 1 Northamp. Co. Repr. 117, on this point seems to be satisfactory. One object of said act doubtless was to obtain uniformity as respects corporations of the same class; all old corporations were to be as if chartered immediately after the passage of said Act of April 29, 1874; this would put all corporations in existence at that time on an equal footing.

"But I prefer to put my ruling on the (to my mind) safer, saner and more conservative ground that the legislative intent, in the passage of said acceptance section of the Act of April 29, 1874, was to put all old corporations accepting the Constitution on a par with corporations chartered immediately after its passage, say, on April 30, 1874. This construction tends to carry out the legislative purpose—namely, uniformity as to the rights, privileges and obligations of corporations of the same class—as of the same date of charter, and protects the rights of the corporation, while it renders it amenable to the Corporation Act of April 29, 1874."

Supporting the same conclusion are the following authorities: Meadville Theological School v. Hempstead, 290 Pa. 222; Eastman on Private Corporations in Pennsylvania, § 91; Wallace v. Lehigh Water Co., 1 Northamp. Co. Repr. 117; Savage on Corporations in Pennsylvania, 297; Com. v. Flannery, 203 Pa. 28.

It is contended on the part of the plaintiff company that the defendant borough has the right, under clause 7 of said Incorporation Act, which said company has already accepted, to take the water-works provided it also takes the gas-plant. And that it would be unjust and inequitable to permit the said borough to take over the water-plant without taking the gas-plant, for the reason that the water-plant is profitable to the said plaintiff company and that the gas-works has never been operated at a profit. This contention fails, for the reason that under the clearly expressed language of the act the borough had the right and option, after a period of twenty years, to take over either the gas or the water, without the other, whether either or both had been operated at a loss or with profit. In fact, whether the gas or water-plant is profitable has no bearing on the rights of the municipality under said act. Prior to the Constitution of 1874, corporations were authorized by special acts of assembly with omnibus purposes and powers. Corporations existed for the furnishing of gas, street railway service, electric light and power and other public utility service, and it could not be successfully contended that a municipality could not take over the gas-plant or water-plant of such a corporation under said clause 7 without also taking over all and every other interest of said corporation and after said corporation had accepted the provisions of the Act of 1874. This section of the act specifically enables a municipality to take over either "water or gas" at any time after twenty years from the introduction of the same. And, in our opinion, it matters not in what manner said gas or water company is being operated. Whether or not the management of the two plants is in one person or in one group of persons, or in the same office, or the accounts kept in the same books, or that the laborers be the same in both operations. Both plants might be run in connection with many other service plants, but certainly the manner of their operation cannot be used to defeat the purposes of the act of assembly under which said plants exist. It is apparent that the existence of these two plants under one management and in the manner evidenced by an examination of the testimony will entail much difficulty of computation. Nevertheless, the Supreme Court, in the case of Greensburg Borough v. Westmoreland Co., 240

Pa. 481, says: "The most serious complications that might arise would be in separating and ascertaining the earnings of the Greensburg Borough water plants and in crediting these plants with the dividends that should be awarded to the same, and possibly the apportionment of the cost of erecting and maintaining a common source of water supply for the consolidated companies; and these are remote if the plaintiff will promptly assert its right to purchase. In any event, they are complications susceptible of an approximately accurate solution."

The right conferred upon boroughs in clause 7 is clearly set forth and defined in the opinion of Mr. Justice Stewart in Reynoldsville Borough *v.* Reynoldsville Water Co., 247 Pa. 26: "It was thus made a condition of the charter of such companies—evidently in view of the fact that the exclusive privilege given them under the terms of the act might become oppressive to the municipality—that after twenty years' enjoyment of the franchises given, they would, upon demand of the municipality and payment of the prescribed consideration, transfer their entire property to the latter. The act was compulsory."

### Legal conclusions.

We conclude, in the language of the late Judge Bell in the case of Tyrone Gas and Water Co. *v.* Tyrone Borough, *supra:*

"When the Tyrone Water Company, plaintiff, on Sept. 1, 1893, accepted the provisions of the Constitution and of the Act of April 29, 1874, and its supplement, it put itself on a par with like water companies chartered immediately subsequent to the passage of said act. It lost its exclusive franchise granted it by its charter, but it gained, in lieu thereof, the exclusive privilege given to water companies by clause 3, section 34, of said Act of April 29, 1874, P. L. (1874) 94. But at the same time it rendered itself amenable to clause 7 of the same section of the same act, which provides a method whereby municipalities can purchase the plants of water companies. . . .

"The water company then ought not to be heard to complain of the legislation of 1874 (hereinbefore referred to), allowing the borough to purchase, since, from its very inception, it was subject to such legislation. . . .

"The Borough of Tyrone, therefore, has no right to construct a municipal water plant; if said borough desires to own its own water-works, it must buy out the water company in accordance with the provisions of said hereinbefore recited clause 7, section 34, Act of April 29, 1874, P. L. (1874) 95."

After a careful consideration of all the testimony, the able arguments of the respective counsel and the law, we are of opinion that the defendant borough has the right and option to become the owner of the water-plant of said plaintiff company in accordance with its declared intention, as evidenced by an ordinance duly enacted by the council of said borough and as provided by clause 7, section 34, of the Incorporation Act of April 29, 1874.

### Decree nisi.

And now, Jan. 7, 1929, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: The injunction heretofore granted is hereby dissolved and the bill in equity dismissed, at the cost of the plaintiff.

The prothonotary is directed to notify counsel for all parties of the filing of this decree, which shall become absolute unless exceptions are filed thereto and to the findings of fact and conclusions of law within the time provided by the rules of equity practice.

From Robert W. Smith, Hollidaysburg, Pa.